IN RE STANLEY D.*
(16081)

Dupont, C. J., and Spear and Hennessy, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued May 2—officially released July 1, 1997

*Raymond J. Rigat,* for the appellant (respondent father).

*Linda Pearce Prestley,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (petitioner).

*Barry J. Ward,* for the minor child.

*Opinion*

HENNESSY, J. The respondent father (respondent) of the child Stanley D. appeals from the judgment of the trial court granting motions by the petitioner, the commissioner of children and families, to open and

modify a disposition of protective supervision.[1] The trial court modified the judgment by terminating protective supervision and ordering that the child be committed to the department of children and families (department) for a period of up to twelve months. The respondent claims that the trial court improperly (1) granted the motions to open and modify the disposition of protective supervision and (2) determined that it was in the child's best interests to be committed to the custody of the petitioner.

The following facts are relevant to this appeal. The child, born on November 17, 1994, was the subject of a neglect petition filed by the department on November 22, 1994. On June 15, 1995, after a contested hearing, the child was adjudged to be neglected pursuant to General Statutes § 46b-120.[2] On July 14, 1995, the trial court rendered a disposition that allowed the child to remain with his parents but ordered a six month period of protective supervision by the department that expired on January 14, 1996. On December 18, 1995, the department filed motions to open and modify the disposition to commit the child to the department for a period not to exceed twelve months. After several days of contested hearings, the trial court granted the motion. This appeal followed.

I

The respondent first claims that the trial court improperly opened and modified the disposition of pro-

---

[1] General Statutes § 17a-93 (i) provides: " 'Protective supervision' means a status created by court order following adjudication of neglect whereby a child's place of abode is not changed but assistance directed at correcting the neglect is provided at the request of the court through the Department of Children and Families or such other social agency as the court may specify . . . ."

[2] General Statutes § 46b-120 provides in relevant part: "(8) [A] child or youth may be found 'neglected' who (A) has been abandoned or (B) is being denied proper care and attention, physically, educationally, emotionally or

tective supervision by failing to determine first whether there had been a change in circumstances. The respondent contends that the statutory scheme in juvenile matters requires that a change in circumstances take place before a disposition can be modified. While noting that Practice Book § 1044.1,[3] which sets forth the method by which a disposition of protective supervision is modified, does not require a finding of a change in circumstances, he maintains that such a finding is required by Practice Book § 1045.1 (2)[4] and by General Statutes § 46b-129 (g).[5] He further argues that, if the court is not required to find a change in circumstances, it would be allowed to review and modify the original disposition, thereby granting a petitioner a trial de novo.

The trial court reviewed the conditions set forth by the original trial court that found the child neglected. It then compared the evidence presented in the hearing on the motion for modification with those conditions and was convinced by a fair preponderance of the evidence that it was in the best interests of the child to

morally or (C) is being permitted to live under conditions, circumstances or associations injurious to his well-being, or (D) has been abused . . . ."

[3] Practice Book § 1044.1 provides: "When protective supervision is ordered, the court will set forth any conditions of said supervision including duration and any review dates. Parental noncompliance with the order of protective supervision shall be a ground for a motion to modify the disposition. Upon finding that the circumstances so warrant, the court on its own motion or acting on a motion of any party and after notice is given and hearing has been held, may modify a previously entered disposition of protective supervision in accordance with the applicable general statutes."

[4] Practice Book § 1045.1 (2) provides: "The petitioner seeking revocation of a commitment has the burden of proof that no cause for commitment exists. If the burden is met, the opposing party has the burden of proof that revocation would not be in the best interest of the child. Each burden is by a preponderance of the evidence."

[5] General Statutes § 46b-129 (g) provides in relevant part: "Any court by which a child or youth has been committed pursuant to the provisions of this section may, upon the application of . . . a parent . . . upon hearing, after reasonable notice . . . upon finding that cause for commitment no longer exists, revoke such commitment . . . ."

be committed to the care and custody of the department for a period of up to twelve months. The trial court made it clear that it did not believe that either party had to show a change in circumstances from the time of the initial neglect finding.

" 'The Connecticut legislature has declared: "The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care . . . ." ' " *In re Juvenile Appeal (84-AB)*, 192 Conn. 254, 262, 471 A.2d 1380 (1984). This policy is accomplished through a statutory scheme that allows the state, through the department, to take custody of a child who is reported to be uncared for, neglected or dependent. See General Statutes § 46b-129 (d).[6] Upon a judicial determination that the child is uncared for, neglected or dependent, the Superior Court has available to it three possible options regarding custody of that child: (1) to commit the child to the custody of the petitioner; (2) to vest such child's care and custody in a third party until the child reaches the age of eighteen; or (3) to permit the natural parent to retain custody and guardianship of the child with or without protective supervision by the department.[7] Gen-

[6] General Statutes § 46b-129 (d) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit him to the Commissioner of Children and Families for a maximum period of twelve months . . . . The commissioner shall be the guardian of such child or youth for the duration of the commitment . . . and in like manner, upon such vesting of his care, such other public or private agency or individual shall be the guardian of such child or youth until he has reached the age of eighteen . . . ."

[7] "Although a court order continuing the custody of the neglected child in the natural parent is not expressly provided for in General Statutes § 46b-129 (d), this third option is implicit in the legislature's use of the permissive term 'may' throughout that subsection. . . . As the court 'may' commit custody to [the department] or vest it in a suitable third party, implicitly a judicial determination may also be made that under the particular circumstances of a given case the best interests of the child are furthered only by permitting

eral Statutes § 46b-129 (d); *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 353, 488 A.2d 790 (1985). If the third option includes an order of protective supervision, the court retains jurisdiction and parental noncompliance with the order is a ground for a motion to modify that disposition. See Practice Book § 1044.1; *In re Mark C.*, 28 Conn. App. 247, 249, 610 A.2d 181, cert. denied, 223 Conn. 922, 614 A.2d 823 (1992). Thus, if the trial court finds parental noncompliance with its orders, it can modify the original disposition.

We must next determine whether the evidence supports the finding of parental noncompliance with the conditions of protective supervision. We conclude that it does.

The trial court that found the child neglected set forth conditions in connection with its order of protective supervision. The conditions were cooperation with the department, participation in family counseling, accepting the help of a parent aide, accepting announced and unannounced visits to the home by the department, advising the department if there is a caretaker of the child other than the parents and having no further involvement with the criminal justice system. The trial court that heard the motion for modification found that the respondent did not cooperate with the department. It also found that the respondent canceled announced visits by the department and the parent aide without prior notice. Moreover, the court found that the respondent was arrested and charged with breach of the peace and threatening. The trial court further found that the child's mother had disappeared for a period of weeks and had neither been in contact with the department or her attorney nor established an ability to exist independently and to provide a safe and

the natural parent to retain custody." (Citation omitted.) *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 353–54 n.9, 488 A.2d 790 (1985).

nurturing environment for her child. The court also found that both parents, prior to the mother's leaving the home, participated in inappropriate violent behavior toward each other, thereby creating an unhealthy environment for the child. The trial court's conclusion that the parents did not comply with the conditions of protective supervision, therefore, was clearly supported by the evidence.

II

The respondent next claims that the evidence did not support the trial court's decision that it was in the child's best interests to remove him from the care and custody of his parents. He argues that the reason given by the trial court for committing the child to the department, "a willful failure on the part of [the respondent] to cooperate with the department and to meet the expectations," was inadequate to deprive the parents of their constitutional right to the custody of their child. We disagree.

When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the court's judgment. We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the court could have concluded as it did based on the cumulative effect of the evidence. See *Barry* v. *Posi-Seal International, Inc.*, 40 Conn. App. 577, 580, 672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996).

On the basis of the evidence it had before it concerning the parents' failure to comply with the conditions of parental supervision, the trial court could reasonably have found that the safety of the child and the strengthening of the family was not being achieved under the order of protective supervision. The court also reasonably concluded that committing the child to the care and custody of the petitioner would provide more pro-

tection and a more stable environment for the child. We conclude, therefore, that the court was well within the bounds of its discretion in finding that it was in the best interests of the child to modify the disposition of protective supervision and to commit the child to the custody of the petitioner.

The judgment is affirmed.

In this opinion the other judges concurred.